RAFAEL M. GONZALEZ, JR.
ACTING UNITED STATES ATTORNEY
TRACI J. WHELAN, IDAHO STATE BAR NO. 4416
ASSISTANT UNITED STATES ATTORNEY
JOSH D. HURWIT, IDAHO STATE BAR NO. 9527
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
6450 N. MINERAL DRIVE SUITE 210
COEUR D'ALENE, ID 83815
TELEPHONE: (208) 667-6568
FACSIMILE:  (208) 667-0814

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    vs.<br><br>LOREN MICHELLE TOELLE<br><br>        Defendant. | Case No. 16-CR-00019-N-BLW<br><br>**SENTENCING MEMORANDUM** |

The United States of America, by and through Rafael M. Gonzalez, Jr., Acting United States Attorney, and the undersigned Assistants United States Attorney for the District of Idaho, submits the following memorandum setting forth the Government's position at sentencing. The Government recommends that the Court sentence the defendant to a term of imprisonment of at least 196 months, 5 years supervised release, a $100 special assessment and order the forfeiture as set out in the plea agreement and preliminary order of forfeiture.

## BACKGROUND

In 2009 the North Idaho Violent Crime Task Force (NIVCTF) became aware that a dancer from Las Vegas was bringing a large amount of oxycodone to the Coeur d'Alene area.

**GOVERNMENT'S SENTENCING MEMORANDUM - 1**

The oxycodone was being sold in the form of 80 milligram pills. The NIVCTF investigated the lead and on April 29, 2010 arrested the defendant Loren Toelle, her son, Steven Jackson and Kari Grundy for distribution of a controlled substance. During that one-day period (April 29, 2010) in a series of controlled purchases, a cooperator, J.O., paid Steven, Kari and the defendant $5,300 for pills J.O. had been fronted. J.O. also received another one hundred and six 80 mg oxycodone pills on a front. The amount of money and pills Loren Toelle's organization moved is obscene. The aforementioned is just a snapshot of one day with one cooperator. In reality, the organization spanned years, involved many cooperators and co-conspirators, and was multi state in its reach.

When interviewed in 2010, the defendant admitted to importing oxycodone pills from Las Vegas, Nevada and bringing them to Coeur d'Alene, Idaho. She told law enforcement she had been doing this since 2009 and had made approximately $30,000 during that year. She admitted using her Cadillac Escalade to deliver and sell pills.[1] On October 6, 2010, in case CR-2010-0007970, the defendant was sentenced in Kootenai County, Idaho for her 2010 conviction of deliveries of a controlled substances. She received an 8 year suspended prison sentence, five years of probation and 90 days local incarceration, 100 hours community service.

The sentence did not have the effect which was surely desired by the sentencing judge. Within months of release from her 3 month sentence, the defendant returned to selling drugs. Having reviewed the discovery and learned how law enforcement caught her the first time, she made some changes in how she managed the organization. Instead of just using bank accounts, she diversified and directed the sellers to use green dot cards, wire transfers and pre-paid Visa

---

[1] This Cadillac Escalade was seized by local law enforcement and her husband, Stanely Tolle, purchased it back. It is interesting to note that this vehicle was again used to distribute and transport controlled substances in the instant case and was again seized by law enforcement.

**GOVERNMENT'S SENTENCING MEMORANDUM - 2**

cards.  She expanded her circle of distribution geographically but tried to narrow the number of people she sold to and who re distributed her product.

The NIVCTF became aware the defendant was back in business.  In June 2012, law enforcement stopped two of the defendant's sellers, F.M. and M.M.   These sellers were in possession of oxycodone pills supplied to them by the Loren Toelle drug organization.  F.M. and M.M. were debriefed and agreed to cooperate.  Investigators learned the defendant was using Fed Ex to ship packages of pills up from Las Vegas, Nevada to Coeur d'Alene, Idaho every other day.  She required her sellers to open the package while on the telephone with her.  The sellers would count out the number of pills and divide the pills up to be given to other distributors. The defendant also provided specific instructions on which bank account or Money Tree account to deposit the money they owed her.  This information was provided to the U.S. Attorney's Office and the federal investigation was opened.  The investigation involved the efforts of the NIVCTF, FBI, DEA, IRS, USMS, and local law enforcement from Idaho, Montana, and North Dakota.  The investigation was exhaustive, including travel records (rail and air travel were both reviewed), financial records were subpoenaed and categorized, information from cooperating defendants and coconspirators along with confidential informants was compared, Fed Ex and other postal records were obtained.  At the conclusion of the investigation, a clear picture of the Loren Toelle drug organization was realized.  The defendant was the leader and organizer of a drug trafficking organization.  She commanded this group with tight control, designating the roles her drug conspirators would play.  She referred to herself as Mama, because she was the matriarch.  She determine what drugs were sold, how they were shipped, the price, the packaging, the location of the stash houses, and who would have access to the controlled

**GOVERNMENT'S SENTENCING MEMORANDUM - 3**

substances.  Her organization was like a plague of locust on the communities she decided to do business in.

It is disturbing how the defendant would choose a location of where she could make the most profit.   Then she and her co conspirators would descend upon the community, taking shifts and pedaling their toxic wares.  One of the ways the word "mama" is defined in the Merriam Webster dictionary is "as a woman in authority."  That was Loren Toelle.  She was tough acting and talking.  Her coconspirators did not want to be on her bad side, she was determined to make more and more money and she decided when and where this organization worked.

We know the investigation resulted in an accurate picture of the organization for several reasons.  First, the financial evidence corroborates the physical evidence, the testimonial evidence and the information gathered from cooperating codefendants and informants.  Second, the post arrest briefings of the coconspirators have corroborated the investigation.  Finally, the evidence was so overwhelming that each defendant pled guilty.  The defendant, Loren Toelle also known as Mama, led a drug trafficking organization which conspired to and did distribute oxycodone, heroin and methamphetamine.  She laundered the profits of these drug sales to make them appear legitimate.  She involved her family in this business.  She caused oxycodone and heroin to be sold to addicts and users.  She did all of this for money, for profit and for greed.

## **LEGAL ANALYSIS**

The Ninth Circuit has set forth a basic framework which the district courts should follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

(1)    Courts are to begin all sentencing proceedings by correctly determining the applicable sentencing guidelines range, precisely as they would have before *Booker*.

**GOVERNMENT'S SENTENCING MEMORANDUM - 4**

    (2)    Courts should then consider the § 3553(a) factors to decide if they support the sentence suggested by the parties.  Courts may not presume that the guidelines range is reasonable.  Nor should the guidelines factors be given more or less weight than any other.  They are simply to be treated as one factor among the § 3553(a) factors that are to be taken into account in arriving at an appropriate sentence.

    (3)    If a court decides that a sentence outside the guidelines is warranted, then it must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.

    (4)    Courts must explain the selected sentence sufficiently to permit meaningful appellate review.

*United States v. Carty*, 520 F.3d 984, 991-92 (9th Cir. 2008).

## SENTENCING CALCULATION

### I.  Statutory Maximum and Minimum Sentence

The PSR correctly sets out the minimum term of imprisonment for count one as five years (60 months) with a maximum term of imprisonment of forty years (480 months).  Count thirteen has no mandatory minimum and a maximum term of imprisonment of twenty years (240 months).

### II.  United States Sentencing Guidelines Calculation

"As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."  *Gall v. United States*, 552 U.S. 38, 49 (2007).

The PSR outlines the applicable guideline range of 188 to 235 months based upon a total offense level of 35, criminal history category II.

## IMPOSITION OF SENTENCE

### I.  Imposition of a Sentence under 18 U.S.C. § 3553

    A.    <u>18 U.S.C. § 3553(a) factors</u>

    1.    <u>The nature and circumstances of the offense</u>

**GOVERNMENT'S SENTENCING MEMORANDUM - 5**

The offense in this case is extremely serious.  At its base, it involves making a profit preying on the weakness of others.  The product the defendant chose to sell is not something that benefits society.  It does not provide people with an opportunity to better themselves or help families grow in love and togetherness.  Oxycodone, heroin and methamphetamine, the products sold by the Toelle drug trafficking organization, bring people to their knees, cause overdoses and death, rip families apart, destroy potential in those who ingest it and increase the likelihood of other criminal behavior.  The opioid epidemic killed over 33,000 people in 2015.[2]  The offense is most serious.

This fraudulent use of banking and other financial institutions is also a serious offense.  The defendant hid the proceeds through her business account, her husband's bank accounts and utilized Money Tree and Money Gram.  These actions undermine the legitimacy of financial institutions and avoid the payment of taxes owed to the citizens of the United States.  As outlined in the evidence and the PSR, $1,466,611.31 was deposited in the defendant'a, her husband's and co conspirator's accounts from drug sales.  Over a million dollars in six years from drug sales!

One of the aggravating factors in this case is that the defendant sought out communities where she did not even reside full time.  She looked for areas where she could make a lot of profit and be the main supplier in a small areas like Coeur d'Alene, Idaho,  Missoula, Montana or Williston, North Dakota.  Her actions were especially predatory.

### 2. The history and characteristics of the defendant

The defendant is a 52 year old woman who has been married four times.  She reports a great relationship with her five children, four of whom are co defendants in the instant case.  She has limited formal education with neither a high school diploma nor a GED.  She has worked in

---

[2] https://www.nytimes.com/2017/01/06/us/opioid-crisis-epidemic.html

**GOVERNMENT'S SENTENCING MEMORANDUM - 6**

the service industry off and on since 1999. The defendant is in relative good health and has never used any controlled substances.

The defendant is the daughter of a minister who was raised to understand the difference between right and wrong. There is no right way to do the wrong thing and this defendant has been doing the wrong thing for many years. She has a prior conviction for substantially the same conduct as the instant offense. Although she is regarded by her mother to be a giving person, the gifts come at a price for the recipient and a benefit for the defendant. For example, J.S. (an unindicted co conspirator who was charged by the state) wanted an elective surgery. The defendant "helped her out" by loaning her the money for the surgery and then letting J.S. pay back the loan by selling controlled substances. (Sealed exhibit 1). M.G. needed money because she lost her job. The defendant "helped her out" by asking her if she wanted to start selling Oxycontin pills. (Sealed exhibit 2). When the defendant's son, Steven Jackson, needed money to pay his rent the defendant had him work with the family and sell oxycodone pills in Coeur d'Alene and heroin in Williston, North Dakota. (Sealed exhibit 3). This pattern repeated itself over and over and over. Whether it was friends or family who wanted to make money, the defendant's advice was to sell drugs and then launder the money. It apparently did not matter that she was putting their freedom at risk just so she could get a percentage of the profits.

> 3. <u>The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment.</u>

The guideline range sentence is sufficient but not greater than necessary to meet 18 U.S.C. 3553(a)(2)(A). A lesser sentence fails to reflect the seriousness of the offense, it will not promote respect for the law nor would it provide just punishment for this multi-year, multi district large scale conspiracy. It is clear the original state sentence did nothing to deter the defendant. If she had been caught while still on supervision with the state she could have served

**GOVERNMENT'S SENTENCING MEMORANDUM - 7**

eight years in prison.  The threat of prison time did nothing to deter her conduct.  It was only after she was convicted the first time that she expanded her operation to include the states of Montana and North Dakota. The possibility of 8 years imprisonment did not stop the defendant from expanding her inventory of product from oxycodone to oxycodone, heroin and methamphetamine.  The bulk of the profits she made from the sale of controlled substances and the bulk of the money laundering all occurred after she had been sentenced in the state court and was on supervision.   A guideline range sentence is very appropriate in this case.

        4.     <u>The need for the sentence imposed to afford adequate deterrence and to protect the public.</u>

The public needs to be protected from the defendant.  She is cunning in her organizational skills, which unfortunately puts society at risk.   The defendant has shown by her actions that she chooses individuals who are vulnerable to work with her.  The vulnerability can be due to familial relationships (her children), the lack of financial stability (J.S., M.G., F.B., M.M.) or their own addiction (J.A., her son, Jessica Fredrick).  It is important that the vulnerable in society be protected.  Her actions effect more than those who buy from her or sell for her; they effect every member of society.  Prescription opioid abuse is costly in economic terms.  The Coalition Against Insurance Fraud estimated the nonmedical use of opioid pain relievers costs insurance companies up to $72.5 billion annually in health care cost. [3]  Employers also bear the cost of this addiction. Opioid abuse costs employers approximately $10 billion from absenteeism and presenteeism alone.[4]   Clearly the defendant's actions have affected more than just herself.  Her organization swept into communities where they did not live, except to sell drugs, and

---

[3] Available at http://www.insurancefraud.org/downloads/drugDiversion.pdf
[4] American Society of Addiction Medicine (ASAM). Cited in:Workforce. "Pain Points." Available at: http://www.workforce.com/articles/21855-pain-points.

**GOVERNMENT'S SENTENCING MEMORANDUM - 8**

spread drugs amongst its inhabitants.  A guideline sentences is sufficient but not greater than necessary to both deter and protect.

        5.       <u>The need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner</u>

The defendant is now divorced and her drug trafficking organization has been dismantled.  She has limited education and is in her early 50s.  This defendant will benefit from a GED or other educations or vocation training offered prior to her release from prison.

        B.       <u>Application of the Guidelines in Imposing a Sentence under 18 U.S.C. § 3553(b)</u>

The government's within-guidelines recommendation is based in part on the fact that such a sentence properly reflects the accumulated wisdom and expertise of the Sentencing Commission, and serves the vital goal of uniformity and fairness in sentencing.  The guidelines, formerly mandatory, now serve as one factor among several that courts must consider in determining an appropriate sentence.  *Kimbrough v. United States*, 552 U.S. 85, 90 (2007).  It remains, however, that "the Commission fills an important institutional role:  It has the capacity courts lack to base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise." *Id.* at 108-09 (internal quotation marks omitted). Thus, "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Id.* (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)).

The guidelines are the sole means available for assuring some measure of uniformity in sentencing, thereby fulfilling a key congressional goal in adopting the Sentencing Reform Act of 1984.  Reference to the guidelines, while carefully considering the 3553(a) factors, is the only available means of preventing the disfavored result of basing sentences on the luck of the draw in

**GOVERNMENT'S SENTENCING MEMORANDUM - 9**

judicial assignments.  Therefore, "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process."  *Gall*, 552 U.S. at 50 n.6.

The guidelines deserve significant respect.  The government recognizes that the guidelines are entirely advisory, and that a district court has discretion to vary from an advisory range, subject only to deferential appellate review for reasonableness.  A district court, however, must consider the guidelines range, *see* § 3553(a)(4), and is usually well-advised to follow the Sentencing Commission's advice in order to assure fair, proportionate, and uniform sentencing of criminal offenders.  Moreover, there are no other 3553(a) factors in this case which mitigate against imposition of a sentence within that range; to the contrary, the 3553(a) factors on balance support the imposition of the recommended guidelines sentence.  Accordingly, the government recommends a within-guideline sentence at least 196 months, 5 years supervised release, a $100 special assessment and order the forfeiture as set out in the plea agreement and preliminary order of forfeiture.

**GOVERNMENT'S SENTENCING MEMORANDUM - 10**

## **CONCLUSION**

Application of 18 U.S.C. § 3553 supports a United States recommended sentence for the defendants crimes of Conspiracy to Distribute Controlled Substances and Conspiracy to Launder Money.  The recommended sentence months is sufficient, but not greater than necessary, to accomplish the goals of sentencing, and a lesser sentence is not supported by application of the 18 U.S.C. § 3553(a) factors.

Respectfully submitted this 24th day of April, 2017.

RAFAEL M. GONZALEZ, JR.
ACTING UNITED STATES ATTORNEY
By:


*s/Traci J. Whelan*
TRACI J. WHELAN
Assistant United States Attorney
JOSH D. HURWIT
Assistant United States Attorney

**GOVERNMENT'S SENTENCING MEMORANDUM - 11**

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 24, 2017, the foregoing **GOVERNMENT'S SENTENCING MEMORANDUM** was electronically filed with the Clerk of the Court using the CM/ECF system, and that a copy was served on the following parties or counsel by:

| | |
|---|---|
| TERRENCE M RYAN<br>1304 W. College Ave<br>Spokane, Washington 99201<br>tryan@qwestoffice.net | ECF Filing |

*S/Marissa Allen*
MARISSA ALLEN
Legal Assistant

**GOVERNMENT'S SENTENCING MEMORANDUM - 12**